**In the Matter of the ESTATE OF Letha SAYLORS, Deceased.**

**Elo BURRIS, Arley Burris, Dorothy Baxter, and Leroy Burris, Appellants,**

**v.**

**Richard CLAIRE, Personal Representative of the Estate of Letha Saylors, Appellee.**

No. 04A03–9601–CV–19.

Court of Appeals of Indiana.

Oct. 15, 1996.

John W. Barce, Judson G. Barce, Barce & Ryan, Fowler, for Appellants.

Dennis L. Woods, Karl M. Jacobs, Fowler, for Appellee.

## OPINION

GARRARD, Judge.

Elo Burris, Arley Burris, Dorothy Baxter, and Leroy Burris ("Burrises") filed objections to the final account in the estate of Letha Saylors ("Saylors"), their deceased sister. The trial court denied the Burrises' objection and ordered the personal representative to carry out the provisions of the final account. The Burrises filed a motion to correct errors which the trial court denied. The Burrises now appeal the trial court's determination that all the inheritance taxes are chargeable against the probate assets which passed to them. We affirm.

## FACTS

Saylors, whose husband Earl Saylors predeceased her, died testate on June 21, 1994. Her will, dated April 29, 1991, was admitted to probate by her executor, Richard Claire ("Claire"). Claire and his wife Vera were long-time friends and neighbors of the Saylorses. In June of 1989, Saylorses entered into a lease with Richard and Vera Claire for their farm real estate, which consisted of approximately 160 acres ("the farm"). A provision of the lease created an option to purchase the farm for one thousand dollars ($1,000) upon the death of the surviving spouse of Earl and Letha Saylors, and noted that the Claires had tenanted the farmland for thirty-eight (38) years and "have at all times been kind, loyal, considerate and helpful friends and neighbors." (R. 17). The provision required the $1,000 to be paid within sixty (60) days of the surviving spouse's death and that notice of election to exercise the option had to be given within thirty (30) days. The provision also stated that Saylors had contemporaneously executed her warranty deed to the farm naming the Claires as grantees and placing the deed in escrow with the Farmers and Merchants Bank. Provided the Claires had made their semi-annual lease payments, the escrow agent was authorized to deliver the warranty deed to the Claires "without further notice or concern" upon receiving the $1,000 payment. (R. 18).

The following provisions of Saylors' will are relevant to this appeal:

ITEM I: I direct that there shall be paid out of my probate estate all my legal debts, expenses of my last illness, funeral and administrative charges, together with all estate, inheritance, succession and other similar taxes imposed upon or with respect to the property, or the interest of any beneficiary therein, which is required to be included in my gross estate for any such tax purposes whether or not property (or interest therein) passes through the hands of my executor. I further direct that my executor shall not require that any part of such taxes be recovered from, paid by, or applied or apportioned between or among the recipients of, or those interest in, any such property.

· · · · ·

ITEM IV: Provided my husband, Earl K. Saylors, survives me, I give and bequeath my property and estate as follows: Fifty percent (50%) thereof to my husband, Earl

K. Saylors, and fifty percent (50%) thereof to my four siblings, Elo Burris ..., Arley Burris ..., Leroy Burris ... and Dorothy Baxter ... in equal shares, share and share alike, or to their issue per stirpes. ITEM V: Should my husband predecease me, then and in that event, I give and bequeath all my property of which I may die seized or possessed to my four siblings named in ITEM IV above in equal shares, share and share alike, or to their issue per stirpes.

(R. 98–99).

The Claires elected to exercise their option to purchase under the lease agreement and submitted timely payment. The appraised value of the farm at Saylors' death was $281,699. Saylors' bank accounts amounted to $94,785.51. The amended Indiana inheritance tax return filed for Saylors' estate indicated that the inheritance tax due was $36,111.60, over $32,000 of which was attributable to the farm. On February 15, 1995, the trial court ordered the tax paid. On April 10, 1995, Claire, as personal representative, submitted a final account to the trial court indicating that the credits claimed were $50,346.09, which included the inheritance tax and $11,500.00 in attorney fees. The assets of the estate totaled $99,853.40, which included the bank accounts and the $1,000 payment by the Claires for the farm. On April 26, 1995, the Burrises filed objections to the final account contending, in part, that the administrative expenses and inheritance taxes should have been apportioned to the Claires based on the appraised value of the farm for inheritance tax purposes. On June 28, 1995, after a hearing and subsequent supporting memoranda from each party, the trial court entered an order finding "said objection ... not well-taken, should be, and hereby is, OVERRULED AND DENIED." (R.14) The final account was approved in all respects. The Burrises filed a timely motion to correct errors or in the alternative a motion for relief from judgment which the trial court denied. The Burrises now appeal.

## ISSUE

The Burrises submit only one issue which we restate as follows:

Whether, based on Saylors' will, the trial court erred in failing to charge a proportionate part of all the debts, expenses, and inheritance taxes against the farm received by the Claires.

## DISCUSSION AND DECISION

■ The Burrises are objecting to the payment of the inheritance taxes and expenses of administration exclusively from the assets held by the estate. In *Wysong v. Nealis*, 13 Ind.App. 165, 41 N.E. 388 (1895), we held that:

> The claims of the executor in his final report for credits against the estate are in the nature of separate complaints or allowances, and the exceptions to them, or any one of them, placed the burden on him, and he was required, to establish the correctness of his report in respect to such matters as were embraced in the exceptions filed. [citation omitted]. He is regarded as the plaintiff, and the exceptors as the defendants.

*Id.* 41 N.E. at 389. *See also Shuey v. Lambert*, 53 Ind.App. 567, 102 N.E. 150, 152 (1913). In the case at bar, Claire, as the personal representative, had the burden of establishing the correctness of his final account.

Therefore, the trial court's judgment is both adverse and general. In *Klebes v. Forest Lake Corp.*, 607 N.E.2d 978 (Ind.Ct.App. 1993), *reh'g denied, trans. denied*, we explained our limited standard of review when a judgment is both adverse and general.

> When the trial court makes no findings of fact, we presume the judgment is based on findings supported by the evidence. *Greensburg Local No. 761 v. Robbins* (1990), Ind.App., 549 N.E.2d 79, 80, *trans. denied*. We must affirm the trial court's judgment if it can be sustained on any legal theory supported by the evidence. *Abels v. Monroe County Education Ass'n* [1986], Ind.App., 489 N.E.2d 533, 540, *cert. denied*, 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518. When making this determination, we do not reweigh the evidence or assess the credibility of witnesses. Instead, we consider only the evidence most

favorable to the judgment together with all reasonable inferences drawn therefrom. *Id.*

*Id.* at 982.

■ The Burrises argue that the farm is part of Saylors' probate estate and as such should be charged with a share of the debts, expenses, and estate and inheritance taxes. They indicate that Saylors' will provides that the debts, expenses, and estate and inheritance taxes be paid out of her "probate estate." However, the Burrises acknowledge that Saylors did not specifically define which assets comprised her probate estate. (Appellant Brief, p. 6). They contend that Saylors' will provided no expression of intent or reasonable inference that only the residue be charged rather than the entire probate estate. The Burrises further contend that since Saylors' will lacks such intent, Indiana law requires that inheritance tax be levied on each distributee's share.

■ The parties do not dispute that the transfer of the farm is subject to Indiana Inheritance Tax. *See* IND.CODE § 6–4.1–2–4. The Indiana inheritance tax is a tax on the right of the heirs to succeed to property and not on a tax on the property itself. *Indiana Department of State Revenue v. Estate of Cohen,* 436 N.E.2d 832, 836 (Ind.Ct.App. 1982). As a general rule, the inheritance tax is levied upon the distributee's share and, unlike federal estate taxes which are a debt of the estate, imposes a personal liability upon the transferee for payment of the tax. *Id.; Matter of Estate of Kirby,* 498 N.E.2d 64, 66 (Ind.Ct.App.1986), *reh'g denied, trans. denied;* IND.CODE § 6–4.1–8–1. Indiana inheritance tax is generally not paid from the residue of the estate *unless* the will so directs. *Matter of Estate of Kirby,* 498 N.E.2d at 66. Similarly, the general rule is that expenses of administering a decedent's estate and the payment of other debts and expenses are chargeable to a decedent's real and personal property. *American Fletcher Nat. Bank and Trust Co. v. American Fletcher Nat. Bank and Trust Co.,* 161 Ind.App. 166, 172, 314 N.E.2d 810, 814 (1974); IND.CODE § 29–1–7–23. However, a testator has "considerable flexibility" in providing for the distribution of his or her estate and "may

charge or exonerate certain portions of his property as to the burdens of debts, taxes, and expenses." *Id.* Absent a contrary direction in Saylors' will, the allocable share of the inheritance tax chargeable to the farm must be levied upon the Claires as distributees and the expenses and debts of the estate are chargeable to Saylors' real and personal property. In the case at bar, the heart of the dispute is whether the language in Saylors' will establishes her intent not to charge a share of the debts, expenses, and estate and inheritance taxes to the farm.

■ We have long held that in construing a will, the governing factor is the intent of the testator. *Matter of Estate of Lane,* 535 N.E.2d 186, 187 (Ind.Ct.App.1989), *reh'g denied; Pleska v. Zakutansky,* 459 N.E.2d 745, 748 (Ind.Ct.App.1984). "When construing a will, effect must be given to the testator's intention so long as such intention does not interfere with established rules of law." *Matter of Estate of Lane,* 535 N.E.2d at 187 (citing *Diaz v. Duncan,* 406 N.E.2d 991 (Ind. Ct.App.1980)). If there is ambiguity in the language of the will, we must first determine whether other provisions of the will make clear the testator's intent. *Pleska,* 459 N.E.2d at 748–49 (citing *Donahue v. Watson,* 411 N.E.2d 741, 749 (Ind.Ct.App.1980), *trans. denied* ). "Although we may be aided by previous cases, the meaning of each will is determined by its own particular facts." *Id.* at 749 (citation omitted).

Item I of Saylors' will provides the basis of the disagreement of the parties as to Saylors' intent. Item I reads as follows:

ITEM I: I direct that there shall be paid out of my probate estate all my legal debts, expenses of my last illness, funeral and administrative charges, together with all estate, inheritance, succession and other similar taxes imposed upon or with respect to the property, or the interest of any beneficiary therein, which is required to be included in my gross estate for any such tax purposes whether or not property (or interest therein) passes through the hands of my executor. I further direct that my executor shall not require that any part of such taxes be recovered from, paid by, or applied or apportioned between or among

the recipients of, or those interest in, any such property.

(R. 98). In June of 1989, approximately two years prior to executing her will, Saylors had entered into the lease which provided the Claires with the option to purchase within 60 days of the death of the surviving spouse of the Saylors. At the same time, Saylors executed a warranty deed to the Claires and established an escrow to hold the deed, collect the $1,000 payment, and deliver the warranty deed to the Claires. When Saylors executed her will in April of 1991, she was fully aware of the Claires' option to purchase.

Our review of Item I discloses a clear central purpose. Debts, expenses and estate and inheritance taxes are to be paid from the estate. That direction specifically includes any taxes "imposed upon or with respect to the property or the interest of any beneficiary therein, which is required to be included ... for ... tax purposes whether or not [such] property (or interest therein) passes through the hands of my executor." Additionally, the provision expressly directs that the executor "shall *not* require that any part of such taxes be recovered from, paid by or applied or apportioned between or among the recipients of ... such property". (Emphasis added). When these directions are considered in context with the option that the testatrix had previously granted to the Claires (and the absence of any other transfers or gifts made outside the estate, but likely to incur inheritance tax consequences), one may conclude with a considerable degree of confidence that Mrs. Saylors intended that the Claires should not be liable for the payment of inheritance taxes upon the value of the farm when they exercised their option, as she expected them to do.

Indeed, the Burrises concede this central purpose by arguing that the Claires should not be responsible for the full amount of inheritance tax attributable to the farm, but, rather, should be liable for a lesser sum representing the proportion of the total tax found by dividing the tax valuation of the farm by the total valuation of the taxable estate. (Brief at p. 12).

The asserted uncertainty of intention arises only because of the opening reference in Item I that payments were to be made from the "probate estate" coupled with Mrs. Saylors' use of an option to accomplish her desire to benefit the Claires. Because at her death Mrs. Saylors was the fee simple owner of the farm (albeit subject to the option) the trial court properly determined the farm was an asset of the probate estate. The court was correct because if the Claires failed to exercise the option for any reason, the farm would have been an estate asset available for the payment of debts, etc. and, ultimately, for distribution to the Burrises under Item IV of the will.

When, however, the Claires exercised their option, paid the purchase price and received the deed, the farm *ceased* to be part of the probate estate. In its stead the price paid became part of the probate estate.

Thus, the direct and simple answer to the argument presented on appeal is that when the time came to pay debts, expenses of administration and taxes, the farm was no longer a part of the probate estate and was, therefore, not liable for use to satisfy such claims. A like situation would exist had the farm simply been sold at auction during the administration of the estate. The problem occurs only because of the substantial difference between the option price and the valuation placed on the farm for inheritance tax purposes.[1]

Should we hold that because of that difference, and the tax impact of the farm on the estate, a portion of the inheritance taxes should attach to the farm because it was a probate asset for a short time? To do so would necessarily impose that burden upon the Claires. And that would clearly be contrary to the intention expressed by Mrs. Saylors in Item I that no part of the inheritance taxes be recovered from a recipient of property transferred outside the estate but included in the estate for inheritance tax purposes.

---

**1.** No question has been presented concerning the inheritance tax valuation. We, therefore, simply accept the value as reported.

Conversely, by refusing to attach the tax to the farm we are able to give full meaning to Item I's direction that such taxes be paid from the estate rather than by the recipient "whether or not [the] property ... passes through the hands of my executor."

We conclude the court committed no reversible error. The judgment is affirmed.

HOFFMAN and ROBERTSON, JJ., concur.