Jesse BALLEW, Appellant–Plaintiff,

v.

TOWN OF CLARKSVILLE, and Richard E. Dickman, Charles N. King, John H. Minta, John B. Krueger, Richard L. Lewis, Robert Popp, and R. Eugene Richert, as duly elected members of the Clarksville Town Council, Appellees–Defendants.

No. 10A04–9511–CV–440.

Court of Appeals of Indiana.

July 25, 1997.

Earl C. Mullins, Jr., Masters, Mullins & Arrington, Louisville, KY, for Appellant–Plaintiff.

Samuel K. Gwin, Jeffersonville, for Appellees–Defendants.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Jesse Ballew appeals from the trial court's denial of his complaint for declaratory judgment and, in the alternative, for reformation of his contract with the Town of Clarksville and its 1981 town board members (collectively "Clarksville"). We affirm.

### ISSUES

I. Whether the declaratory judgment that Ballew did not have a right to tax abatement under a settlement agreement for the purchase of real property is supported by sufficient evidence.

II. Whether the trial court erred in failing to reform the settlement agreement between the parties.

### FACTS

Prior to 1981, the Town of Clarksville was under a legal obligation to make infrastructure improvements for the residents of Lincoln Park, a subdivision of Clarksville. In order to obtain the necessary funding for these improvements, Clarksville planning consultant Sharon Wilson prepared an application for a community development block grant from the Housing and Urban Development Agency ("HUD"). Clarksville subsequently received a grant to develop Lincoln Park as a residential subdivision and to build the required infrastructure. Under the grant, Clarksville was required to develop a housing strategy which would provide new or rehabilitated housing for the residents of Lincoln Park.

To accomplish the aforementioned objectives, Clarksville desired to acquire 64 residential lots from Jesse Ballew in the residential area of Lincoln Park. Ballew, as a non-resident landowner of many lots in Lincoln Park, initially opposed the residential development of Lincoln Park and sought the commercial development of the area. On April 27, 1981, the Clarksville Town Board rejected Ballew's request to consider revising the Lincoln Park HUD grant application and unanimously voted to proceed with the Lincoln Park project as originally planned.

Pursuant to the Uniform Acquisition Act, Clarksville began the acquisition process and procured two appraisers and a certified review appraiser to determine the fair market value of the 64 lots. Based on the combined appraisals for the 64 lots, Clarksville made an offer of $152,680 (approximately $2,380 per lot). Ballew rejected this offer, and tendered a counteroffer of $576,000 ($9,000 per lot). Thereafter, Clarksville entered into intense negotiations with Ballew regarding the purchase of the 64 lots.

On December 17, 1981, Ballew and the Town Board held a negotiation meeting to establish a purchase price for the lots. Wilson and her assistant took notes at the meeting and prepared detailed minutes. According to the minutes, Ballew initially stated he would not take less than $576,000 for just compensation for the 64 lots. Town Board President, C. Kenneth Meloy, finally stated that "the Board would offer Mr. Ballew $289,500 for the 64 lots" and "that the Board's offer of $289,500 would be good until Monday [December 21, 1981] and only if Mr. Ballew could bring in appraisals higher than the Town's." (R. 759). Ballew orally accepted this offer and stated that he would provide the necessary appraisals. The parties failed to execute any document memorializing the results of this negotiation.

The minutes then reflect that Ballew subsequently made an inquiry concerning the other phases of the Lincoln park project. Meloy stated "that the plan called for the

construction of single family homes within the target area" and "that the Town Board was going to pass an ordinance to abate taxes in [Lincoln] Park." (R. 759). Meloy then asked Wilson to explain the concept of tax abatement to Ballew. After Wilson explained this concept, Ballew asked if he could receive a tax abatement on a parcel of land in Old Clarksville, an area outside of Lincoln Park, upon which he planned to construct an apartment complex. The Town Board stated that it would include the area of Old Clarksville in a tax abatement ordinance. One Town Board member suggested that Ballew construct some houses in Lincoln Park since the Town was going to provide a tax abatement for Ballew's property in Old Clarksville. Ballew expressed interest in building as many as five houses in the target area of Lincoln Park under a nominal purchase plan, and the Town Board assured Ballew the opportunity to obtain the 16 lots necessary to construct the houses once a public offering was made.

With Ballew in attendance, the Town Board met again on December 21, 1981. The official minutes of this meeting reflect that Wilson presented to the Town Board, without objection, the following terms of a proposed negotiated settlement to the Board:

1) A total cash payment of $289,500 for the 64 lots;

2) The resale of 16 of the 64 lots acquired by the Town to Mr. Ballew at a cost of $1.00 per lot;

3) On ten of the 16 lots resold to Mr. Ballew, which lots are to be specified by the Town at a later date, Mr. Ballew is to build five houses according to the specifications of the Town for relocatees;

4) The Town of Clarksville shall agree to specify Lincoln Park as an Urban Development Area and agree to pass a tax abatement ordinance to stimulate development in Lincoln Park which tax abatement is for all residents of the Lincoln Park and not limited to the 64 lots of Mr. Ballew;

5) That Mr. Ballew shall receive a tax abatement by ordinance passed by the Town Board on property owned by him in

the south end of Clarksville, and that the Town Board agree that since the property is properly zoned R–2 the approval would be given for the building of a four-plex on the property after the customary procedures for building new construction were met by Mr. Ballew.

(R. 764). The Town Board then unanimously voted to approve the terms of this proposed negotiated settlement (hereinafter "settlement agreement"). Apparently, no written settlement agreement for the purchase of the 64 lots was executed by the parties.

On December 28, 1981, Clarksville adopted Ordinance No. 81–3484, which designated specific lots within Lincoln Park as urban development areas for tax abatement purposes. The ordinance provided the property owners of the designated lots the opportunity to obtain a tax abatement for improvements made on their property. The ordinance did not provide Ballew with an unqualified personal right to tax abatement on any and all property he might own in Lincoln Park. On January 9, 1982, Meloy and Jesse Ballew executed three separate sale and purchase agreements for the 64 lots.[1] In those contracts, Clarksville agreed to pay the total purchase price of $289,500 for the 64 lots and no other consideration was mentioned by the parties.

In 1994, Ballew appeared before the Town Council requesting approval of a "Statement of Benefits" for a tax abatement for improvements made on certain commercial property in Lincoln Park. Specifically, Ballew was requesting a tax abatement for the construction of a retail food and beverage provider known as O'Charley's Restaurant and a retail automobile glass repair service known as Autoglass. The Town Council denied Ballew's request for tax abatement for these commercial improvements.

Ballew then initiated this action seeking a declaratory judgment to determine whether he has an unqualified right to a tax abatement for any and all improvements on property he might own in Lincoln Park under the settlement agreement and, in the alternative,

---

**1.** Three sale and purchase agreements were necessary because Ballew owned the lots individual-ly, also, jointly with his wife, and as owner of Jesse Ballew Enterprises, Inc.

requested a reformation of the contract between the parties. At trial, three of the five voting members of the 1981 Clarksville Town Board testified that they believed that Ballew was entitled to a tax abatement on any and all improvements that he made in the Lincoln Park area as a result of the settlement agreement. However, Wilson, who had taken extensive notes during the December 17 negotiation meeting and had presented the proposed terms of the proposed negotiations to the Town Board, testified that the settlement agreement did not grant Ballew a right to a tax abatement. Wilson provided further testimony that the tax abatement was for improvements on residential property, not commercial improvements. The official minutes of the December 21, 1981 Town Board meeting were also admitted into evidence. After a two-day bench trial, the trial court entered a judgment for Clarksville. This appeal ensued.

## DECISION

### I. *Right to tax abatement*

Ballew first contends that the trial court's judgment is not supported by sufficient evidence. Ballew argues that the evidence before the trial court showed that Clarksville gave him a personal right to a tax abatement on any and all improvements made on his property in Lincoln Park as partial consideration for the 64 lots sold to Clarksville. We disagree.

■ We initially note that no request was made for findings of fact or conclusions of law and the trial court made none. When the trial court makes no findings of fact, we presume that the general judgment is based on findings supported by the evidence. *Matter of Estate of Saylors*, 671 N.E.2d 905, 907 (Ind.Ct.App.1996). We must affirm the judgment upon any legal theory consistent with the evidence. *Bright v. Kuehl*, 650 N.E.2d 311, 313 (Ind.Ct.App.1995), *trans. denied.* When making this determination, we neither reweigh the evidence nor assess the credibility of the witnesses. *Id.* Instead, we consider only the evidence most favorable to the judgment together with all reasonable inferences drawn therefrom. *Matter of Estate of Saylors*, 671 N.E.2d at 907–08.

■ In the present case, the evidence presented by both parties was highly contested and disputed. Clarksville and Ballew never executed a written settlement agreement as a result of their negotiations in this case. However, the parties did enter into written sale and purchase agreements regarding the purchase of the 64 lots, and nowhere in the agreements is there language which gives Ballew an unqualified personal right to tax abatement on property he might own in Lincoln Park. Hence, any contract or agreement which did exist concerning tax abatement as partial consideration for the sale of the lots must have been based on oral communications between the parties. Therefore, the terms of a contract not reduced to writing are a matter to be interpreted by the trier of fact. *Tuthill Corp. Fill–Rite Div. v. Wolfe*, 451 N.E.2d 72, 77 (Ind.Ct.App.1983), *reh'g denied.*

■ While there is some evidence that the parties orally agreed that Ballew would receive an unqualified personal right to a tax abatement as partial consideration for the 64 lots purchased by Clarksville, there is also evidence to the contrary. Even though three members of the former Clarksville Town Board testified that they believe Ballew was entitled to the tax abatement, their testimony was not unequivocal and was contested by Clarksville. The three Town Board members conceded that they had no official documentation in support of Ballew's contention that he had a unqualified personal right to a tax abatement for improvements on property he might own in Lincoln Park.

Furthermore, all written documentation of the negotiations suggest that Ballew was not given a unqualified right to a tax abatement. The unofficial minutes from the December 17 negotiation meeting (as kept by Wilson and her associate) reflect that Clarksville agreed to pay $289,500 as consideration for the 64 lots, but did not promise Ballew a right to tax abatement on improvements on any and all property he might own in Lincoln Park as partial consideration for the 64 lots. The official minutes from the December 21 Town Board meeting, upon which Ballew relies, also do not reflect that Clarksville gave Bal-

lew an unqualified right to a tax abatement on any and all property he might own in Lincoln Park. To the contrary, the official minutes merely reflect that Clarksville agreed to designate Lincoln Park as an Urban Development Area and to create a tax abatement ordinance for all *residents* of Lincoln Park. Although Ballew was a property owner in Lincoln Park, he was not a resident.

Finally, Wilson, the planning consultant who was intimately involved in the Lincoln Park project and actually presented the proposed settlement agreement to the Town Board on December 21, testified that Clarksville did not give Ballew a right to tax abatement for any and all property that he owned in Lincoln Park. Wilson's testimony is supported by her extensive notes taken at the December 17 negotiation meeting and the minutes from the December 21 Clarksville Town Board Meeting. This is sufficient evidence for the factfinder to determine that Ballew did not have a right to tax abatement on any and all property owned by Ballew within the Lincoln Park area. We refuse Ballew's invitation to reweigh the evidence. *Bright,* 650 N.E.2d at 313.

## II. *Reformation*

Count II of Ballew's complaint sought reformation of contract. The complaint read in pertinent part:

> If the Court determines that the Plaintiff does not have an enforceable contract which arose in 1981 by the agreement of the parties, then the Plaintiff prays the Court to reform the aforesaid agreement of the parties and to require the Defendant, Town of Clarksville, by and through its duly elected Town Council members to pay the full consideration for the property and services which it received in 1981 (and thereafter as the Plaintiff complied with the terms of the agreement) and prejudgment interest on the money which was not paid in 1981.

■ On appeal, Ballew contends that the trial court failed to address the issue of reformation of contract. In Indiana equity has jurisdiction to reform written documents in only two well-defined situations: (1) where there is a mutual mistake—that is, where

both parties mistakenly execute a document which does not express the true terms of their agreement; or (2) where there has been a mistake by one party, accompanied by fraud or inequitable conduct by the remaining party with knowledge of the other's mistake. *See Plumlee v. Monroe Guar. Ins. Co.,* 655 N.E.2d 350, 356 (Ind.Ct.App.1995), *reh'g denied, trans. denied; D.A.X., Inc. v. Employers Ins. Of Wausau,* 659 N.E.2d 1150, 1156 (Ind.Ct.App.1996), *reh'g denied, trans. denied.*

■ In the present case, there are no legal grounds which would have permitted the trial court to reform the contract between the parties. Ballew has failed to cite any evidence that both parties mistakenly executed a document which did not express the true terms of their agreement or that Clarksville acted fraudulently or inequitably while having knowledge of any mistake made by Ballew. Therefore, the trial court did not err in refusing to reform the contract.

■ Furthermore, although "equity has jurisdiction to reform written documents," *Plumlee,* 655 N.E.2d at 356, "a parol contract cannot be reformed[ ] since equity will not reform agreements not reduced to writing." 76 C.J.S., Reformation of Instruments § 5, p. 356. Inasmuch as Ballew requested the trial court to reform a settlement agreement between the parties which was not reduced to writing, the trial court properly refused to reform the oral agreement.

■ Finally, Ballew's complaint actually did not seek reformation of the contract, but instead, requested the trial court to rewrite and then enforce new terms to the oral agreement. There was no meeting of the minds as to the terms to be substituted for that to be aside. *See Plumlee,* 655 N.E.2d at 356. A court, even in equity, cannot make a new contract for the parties, or add new terms thereto. *See Puetz v. Cozmas,* 237 Ind. 500, 147 N.E.2d 227, 231 (1958) ("The court cannot re-write and then enforce contracts which, to the knowledge of the court, the parties themselves did not enter into.").

We conclude that the trial court properly refused to reform the contract.

Judgment affirmed.

CHEZEM and BAKER, JJ., concur.