**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Sep 24 2013, 5:34 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**JOSEPH M. DIETZ**
Meils, Thompson, Dietz & Berish
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| In the Matter of the Supervised Estate of Violet Whitaker, Deceased, | ) | |
| | ) | |
| STEPHEN WHITAKER and DAMIAN WHITAKER,[1] | ) | |
| | ) | |
| Appellants-Intervenors, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1212-EU-1022 |
| | ) | |
| FERDINAND CLERVI, Personal Representative, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gerald S. Zore, Judge
Cause No. 49D08-1011-EU-51543

**September 24, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

---

[1] We note that only Stephen Whitaker participates in the present appeal. However, "[u]nder Indiana Appellate Rule 17(A), '[a] party of record in the trial court or Administrative Agency shall be a party on appeal.'" *Hoosier Outdoor Adver. Corp. v. RBL Mgmt., Inc.*, 844 N.E.2d 157, 162 (Ind. Ct. App. 2006) (quoting Ind. Appellate Rule 17(A)).

Stephen Whitaker ("Whitaker") appeals the probate court's order approving the verified closing statement for the closing of the supervised estate of Violet Whitaker ("Violet"). Whitaker raises several issues on appeal, which we consolidate and restate as:

I. Whether the probate court abused its discretion when it rescinded its previous order that all personal property not yet distributed by agreement of the heirs be photographed; and

II. Whether the probate court erred when it dismissed Whitaker's objections to the closing of the estate and the final accounting and ordered the estate closed.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Whitaker's Aunt Violet was eighty-six years old when she died testate on November 25, 2010. In her Last Will and Testament ("the Will"), Violet bequeathed all of her personal property to her eight nieces and nephews "in shares of substantially equal value, to be divided as they shall agree, and to be part of their distributive percentage share." *Appellant's App*. at 15-16. The Will also provided that if the heirs fail to agree within five months of her death, the "Personal Representative shall sell any and all remaining items, and add the proceeds to [the] residuary estate." *Id*. at 16. Violet devised and bequeathed 88% residuary estate in equal shares to the same nieces and nephews, with the remainder being divided equally between two charities. Ferdinand Clervi ("the Personal Representative") was appointed personal representative pursuant to the Will.

After Violet's death, Whitaker and two other heirs worked to help wind up Violet's affairs by cleaning her house and cleaning and sorting many of her possessions.

2

Some of the possessions were boxed up and put into storage, and each of the heirs present took some possessions. Whitaker removed photographs, vases, art objects and other items of value from the house.

On November 30, 2010, the Personal Representative filed the petition for probate of will and a request that he be authorized to proceed with unsupervised administration of the estate, which the probate court approved. On October 31, 2011, the Personal Representative filed the "Personal Representative's Closing Statement to Close the Estate upon Completion of Administration" with the probate court. *Id*. at 40. A "Waiver of Notice and Concurrence in Closing Statement" was filed for each of the heirs, with the exception of Whitaker and Damian Whitaker ("Damian"), on January 25, 2012. *Id*. at 47-54. On January 27, 2012, Whitaker and Damian filed an objection to the closing statement, asserting that the Personal Representative fees and attorney fees were excessive, that not all of the assets of the estate were listed in the accounting, particularly jewelry and personal property, and that "family pictures, scrapbooks, and such have not been fairly distributed or made available for copies to the beneficiaries and are in the control of someone other than the personal representative." *Id*. at 57-58.

On March 13, 2012, a hearing was held concerning pending issues, and on March 23, 2012, Whitaker and Damian tendered, and the probate court approved, an order regarding the hearing. The order provided, in relevant part:

> 1.  All books should be photographed showing the outside of the book with a copy of the page or notation showing the edition and year published, including the Kierspel family book.

3

2.      All family scrapbooks should be photographed showing the first four pages of each scrapbook and cover.

3.      All personal property or household furnishing, including, but not limited to, vintage hats, artwork and dolls, removed from the home or storage unit, after the initial distribution, should be listed and photographed and be part of the inventory to be distributed by any final family agreement. . . .

*Id*. at 62. On March 30, 2012, the Personal Representative filed a "Motion to Stay Order on Hearing of March 13, 2012 Pending Clarification and/or Modification." *Id*. at 66-68. The probate court granted a stay and ordered a hearing on April 3, 2012. After the hearing, the probate court issued an order requiring all jewelry returned to the office of the Personal Representative's attorney for appraisal by an appraiser hired by the attorney. The scrapbooks and boxes of books were to be itemized and listed, and one box of scrapbooks and photos at a time was to be shipped to Whitaker so that he could photograph them, with each box so sent being returned to the attorney before another could be shipped to Whitaker.

On May 2, 2012, Whitaker and Damian filed a motion to convert the estate to supervised, which was granted by the probate court, and they filed their "Amended Objections on Accounting, Distributions of Estate and Personal Representative and Attorney Fees." *Id*. at 82-83. They reiterated their previous objections based on the fact that all of the assets of the estate were not listed in the accounting, including jewelry, personal property, furniture, books, scrapbooks, and family items and that the personal representative and attorney fees were excessive. *Id*. at 82. They further added:

4.      That in addition to jewelry being removed from the State of Indiana, personal property, including scrap books [sic], family documents,

family Bible, dolls, and other items not yet determined were taken by some of the legatees outside of a family agreement and said items should be returned to Indiana.

5.	That the personal property in question should be returned to Indiana, until the court determines who is entitled to said items. If certain items are not distributed by agreement among the legatees entitled to under the Will, then sold as the Will directs. . . .

*Id*.

On June 5, 2012, the probate court held another hearing on the objections. Whitaker testified that, although there had been an informal family agreement dividing up the personal property, he was not sure about some jewelry and old books and whether he had seen all of the personal property or whether some of the heirs possessed items he had not seen or photographed. *Tr*. at 109-19. He was not able to state what exact items he thought were missing or who may be in possession of them. He stated that he wanted the probate court to order the personal property returned to Indiana and sold at an auction so he could view and bid on the items. *Id*. at 120. At the conclusion of the hearing, the court issued an order stating:

1.	The parties shall agree in writing on any distribution of personal property within 30 days.

2.	All personal property remaining after 30 days shall be sold at public auction and the net proceeds distributed pursuant to Article III of the [Will].[2]

*Id*. at 92.

---

[2] Article III of the Will stated that Violet devised and bequeathed her residuary estate to the named nieces and nephews, in equal eleven percent shares, with the addition of two charities that would each receive a six percent share. *Appellant's App*. at 16.

After the June 5, 2012 hearing, Whitaker and his attorney visited the office of the Personal Representative's attorney and photographed jewelry from the estate for two hours. Whitaker ran out of time and was not satisfied with the jewelry inventory, but could not explain what items he was looking for or what items were missing. On July 18, 2012, a third hearing was held, and the probate court entered an order requiring the legatees to return all personal property to the Personal Representative within ninety days to be sold at public auction. *Appellant's App.* at 102. The probate court clarified its order, stating that all of the personal property taken from the estate at any time, including the property taken by informal agreement, was ordered returned. *Tr.* at 171-72.

Each of the heirs except for Whitaker and Damian signed an affidavit regarding whether they received items of personal property and that they had returned or were planning to return the property. Neither Whitaker nor Damian returned any personal property as ordered by the probate court or returned a signed affidavit regarding the property. On October 25, 2012, the Personal Representative filed a motion for rule to show cause as to why the objections of Whitaker and Damian should not be dismissed for failure to comply with the probate court's July 18, 2012 order. In the response to this motion, Whitaker informed the probate court that the reason that they had not complied with the order was that Whitaker lost the personal property he had taken from Violet's home, and he had also lost the personal property designated to Damian, which Damian never even received. *Appellant's App.* at 128.

A hearing was held on the motion for rule to show cause, and at that hearing, the attorney for Whitaker and Damian admitted that she was aware as early as March 2012

6

that her clients had possibly lost the personal property that had been received from the estate when Whitaker told her that he did not know where the items were. *Tr.* at 190, 198. At the conclusion of the hearing, the probate court dismissed the objections and ordered the estate closed. Whitaker now appeals.

## DISCUSSION AND DECISION

### I. Discovery Order

Discovery matters are fact-sensitive, and therefore, the ruling of the trial court is cloaked in a strong presumption of correctness on appeal. *Wright v. Mount Auburn Daycare/Preschool*, 831 N.E.2d 158, 162 (Ind. Ct. App. 2005), *trans. denied.* We review a trial court's decision regarding discovery matters for an abuse of discretion. *Id.* A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* An abuse of discretion also occurs when the trial court misinterprets or misapplies the law. *Id.* Generally, we will not reverse a trial court's discovery order unless there has been a showing of prejudice. *Id.*

Whitaker argues that the probate court abused its discretion when it issued the April 3, 2012 order rescinding its previous order that all personal property not yet distributed by agreement of the heirs be photographed. He contends that the order effectively precluded him from engaging in discovery because he wanted to photograph items from the estate that were to be appraised, particularly pieces of jewelry. Whitaker asserts that, given the number of items in the estate, and the distance that he had to travel for hearings, he should have been allowed an opportunity to conduct this discovery, and the effect of the probate court's decision was an abuse of discretion.

7

Here, a conference was held on March 13, 2012 at which discovery issues were discussed. Following the conference, Whitaker tendered an order purporting to summarize the conference, which stated that all of the books and personal property at issue were required to be photographed. The Personal Representative objected to this order on the basis that it incorrectly summarized what occurred at the conference and filed a motion to stay the order pending clarification, which was granted. After the hearing on the objection, the probate court issued the order, which required all of the jewelry to be sent to the office of the Personal Representative's attorney for appraisal, the books and scrapbooks to be itemized, and the scrapbooks and photographs to be sent one box at a time to Whitaker for him to photograph. The probate court issued this order after concluding that books and scrapbooks had no value and only the jewelry might have some value. *Tr*. at 46. We conclude that the probate court acted reasonably in modifying its previous order by ordering that lists of the items be made based on the fact that there was confusion as to what the parties had agreed and the fact that most of the contested items had little or no monetary value.

Further, the record shows that this order did not effectively deny Whitaker the opportunity to engage in discovery. Whitaker testified that he stayed in Indianapolis for two weeks after Violet died to help go through Violet's personal property. *Id*. at 138. During this time, he stated that he took "hundreds and hundreds of photographs and posted them [online]." *Id*. at 101-02. He also testified that he removed photographs and other items of value, including vases, and pieces of art, from Violet's home, which he photographed and scanned. *Id*. at 103. Whitaker was also given approximately 180

8

photographs of items from the house from the Personal Representative's attorney. *Id*. at 108.

Whitaker was also able to view and photograph the jewelry on several occasions. He initially was able to view it in December 2010 after Violet passed away. The jewelry was thereafter placed in storage because an agreement could not be reached regarding it. Although sometime subsequent, two of the heirs removed part of the jewelry out of state, Whitaker told the court he would travel to Virginia to view the jewelry, but he did not do so. The probate court then ordered all of the jewelry to be returned for appraisal, and a completed appraisal and photographs were given to Whitaker. Because Whitaker was not satisfied with this appraisal, he was allowed to go to the office of the Personal Representative's attorney and was given two hours to photograph the jewelry. We conclude that Whitaker was afforded numerous opportunities to conduct discovery regarding the personal property and was not prejudiced by the probate court's April 3, 2012 order. The probate court did not abuse its discretion when it issued the order.

## II.  Closing of Estate

Whitaker also argues that the probate court erred when it dismissed his objections to the final accounting of the estate and ordered the estate closed. When objections are filed to the final accounting, the personal representative is considered the plaintiff, and the objectors are considered the defendants. *In re the Estate of Saylors*, 671 N.E.2d 905, 907 (Ind. Ct. App. 1996). When a court enters a judgment but does not make findings of fact, we presume the judgment is based on findings supported by the evidence. *Id*. (citing *Greensburg Local No. 761 v. Robbins*, 549 N.E.2d 79, 80 (Ind. Ct. App. 1990), *trans.*

9

*denied*). We must affirm the trial court's judgment if it can be sustained on any legal theory supported by the evidence. *Id*. (citing *Abels v. Monroe Cnty. Educ. Ass'n*, 489 N.E.2d 533, 540 (Ind. Ct. App. 1986), *cert. denied,* 480 U.S. 905 (1987)). When making this determination, we do not reweigh the evidence or assess the credibility of witnesses. *Id*. Instead, we consider only the evidence most favorable to the judgment together with all reasonable inferences drawn therefrom. *Id.* at 907-08.

Indiana Probate Code provides: "At any time prior to the hearing on an account of a personal representative, any interested person may file written objections to any item or omission in the account. All such objections shall be specific and shall indicate the modification desired." Ind. Code § 29-1-16-7. Whitaker contends that the closing statement and final accounting should not have been approved because not all of the personal property had been returned to be valued and sold. In his appellant's brief, he claims that books, various scrapbooks, and a box of postcards had not been returned to Indiana.

The probate court ordered on June 5, 2012 that, if an agreement could not be reached within thirty days, the proper remedy was for all of the personal property to be returned to Indiana for sale at auction. *Tr*. at 146. When Whitaker went to the office of the Personal Representative's attorney to view the items that had been returned, he remained unsatisfied that all of the items had been returned, but could not identify which items were missing. Thereafter, on July 18, 2012, the probate court ordered that the heirs return all personal property within ninety days, and although Whitaker represented that he would be able to comply with this order, he had actually lost the property he had

10

removed from Violet's home for himself and Damian. Whitaker's lost items made it impossible for him to add that property to the accounting.

The probate court in this case was faced with an informal family agreement regarding distribution of some of the personal property, and when the heirs could not agree as to the division of the property, the only way to ensure who had possession of each item was to order all of the personal property returned and sold at auction. This course of action would allow the heirs the opportunity to view all of the personal property and bid on whatever they wanted. This decision by the probate court was a reasonable solution to the complaints that items were not being distributed fairly or being made available for copying. After receiving consents to the accounting by all of the other heirs, and after holding five hearings concerning Whitaker's objections to it, the probate court properly determined that it had exercised sufficient supervision over the estate and that, under the circumstances, Whitaker's objections lacked merit and should be dismissed. We do not believe that the probate court erred in its determination to dismiss the objections and order the closing statement approved.

Affirmed.

ROBB, C.J., and RILEY, J., concur.