

IN THE

# Court of Appeals of Indiana

Christopher R. Cleary,

*Appellant-Defendant*

v.

Charles Morlan,

*Appellee-Plaintiff*



FILED

Mar 06 2026, 9:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

March 6, 2026

Court of Appeals Case No.
25A-PL-1590

Appeal from the LaPorte Superior Court

The Honorable Richard R. Stalbrink Jr., Judge

Trial Court Cause No.
46D02-2302-PL-000232

**Opinion by Judge Felix**
Judges May and Mathias concur.

**Felix, Judge.**

## Statement of the Case

Pursuant to a verbal agreement, Charles Morlan agreed to wire Christopher Cleary's new house for $9,000. Morlan completed the work—which by all accounts was satisfactory and passed inspection—but Cleary refused to pay. Cleary claimed the agreement was for labor and materials; Morlan claimed it was for labor only. Morlan filed a mechanic's lien and sued Cleary to foreclose that lien. After a bench trial, the trial court entered judgment of foreclosure in favor of Morlan. Cleary now appeals, and between them, the parties raise two issues for our review:

1. Whether the trial court erred by foreclosing Morlan's mechanic's lien; and
2. Whether Morlan is entitled to appellate attorneys' fees.

We affirm and remand with instructions.

## Facts and Procedural History

In 1990, Cleary purchased the real estate located at 2007 Oriole Trail, Long Beach, Indiana (the "Property"). At some time prior to March 2021, Cleary's house on the Property "burned down," Jan. Tr. Vol. II at 7.[1] Thereafter,

---

[1] Indiana Appellate Rule 28(A) and Items 2(a), 11, and 13 of Appendix A require a court reporter to consecutively number the volumes of the Transcript; prepare only one table of contents for the entire transcript, including when multiple hearings are transcribed; and to combine multiple hearings into a single transcript, although the hearings may be split between volumes if the court reporter so chooses. Here, two hearings were transcribed, and they occurred on January 23 and May 20, 2025. The court reporter submitted

Cleary, who is a builder in Illinois, began building a new home on the Property (the "New House").

[4] In fall 2022, Cleary solicited estimates for wiring the New House. James Lechtanski of Harbor Electric estimated his company could do the work for $25,000, which included materials and labor but did not include fixtures. Approximately $12,000 to $14,000 of that estimate was solely for labor. In mid-November, Morlan and fellow electrician Walter Wroblewski met with Cleary at the Property to determine what Cleary "wanted done." Jan. Tr. Vol. II at 77. Soon after Morlan and Wroblewski left, Cleary and Morlan had a telephone conversation regarding payment. Morlan verbally agreed to wire the New House in exchange for $9,000 (the "Agreement"). Cleary told Morlan to "call in what [he] need[ed] to do" the job, and Cleary would "go pick it up." *Id.* at 128.

[5] Morlan had Wroblewski, James Buchanan, and Darren Nichols help him complete the work. The four men had "almost 100 years" of combined experience as electricians. Jan. Tr. Vol. II at 118. Morlan "placed the order" for the materials, *id.* at 144; Cleary picked up and paid for the materials; and Morlan and his team completed the job as requested. Cleary was satisfied with Morlan's work, and it was approved by a local inspector. Nevertheless, Cleary refused to pay Morlan the full $9,000 "[b]ecause [Cleary] deducted the material

---

two tables of contents and two sets of Transcript Volume II, one for each of the two hearings. To avoid confusion, we include the relevant month before each reference to the Transcript.

list from the 9,000," which would have left Morlan with $2,400. Jan. Tr. Vol. II at 48. Cleary and Morlan disagreed over the amount owed, and Morlan handed off the discussion to Wroblewski. Cleary told Wroblewski that "he wouldn't pay [Morlan and his team] a red cent. . . . He said we charged way too much. Thought it was just astronomical." *Id.* at 81.

[6] On December 1, 2022, Morlan recorded a $9,000.00 mechanic's lien on the Property (the "Lien"). In February 2023, Morlan sued Cleary for foreclosure of the Lien based on Cleary's breach of the Agreement and unjust enrichment. Cleary countersued Morlan for violating the Indiana Home Improvement Contracts Act[2] ("HICA").

[7] At the bench trial, Morlan testified that the Agreement was $9,000 for labor only and Cleary "was covering all materials," Jan. Tr. Vol. II at 125. Cleary testified that the agreement was "$9,000 for time and material." *Id.* at 153. Additionally, Cleary agreed that if the cost of materials had been more than the agreed upon price, Morlan would have owed Cleary money:

> Q [H]ypothetically sir, according to you, if the agreed upon amount was $10,000 and the material cost came in at 12, [Morlan] would owe you 2?
>
> A Hypothetically, yes.

---

[2] Ind. Code §§ 24-5-11-1 to -14.

*Id.* at 42.

[8] The trial court determined that HICA did not apply; the Agreement was for only labor and Cleary breached the Agreement by refusing to pay Morlan; and Morlan was "equally entitled to relief and the foreclosure of [the] Lien under either the theory of unjust enrichment or Quantum Meruit," Appellant's App. Vol. II at 24. Consequently, the trial court foreclosed the Lien; ordered the Property sold by sheriff's sale; and awarded Morlan a "judgment in rem against [the Property] and in personam against . . . Cleary, in the sum of $27,091.45 as of February 28, 2025, to which the net proceeds of the sale of the [Property] shall be applied." Appellant's App. Vol. II at 27. The judgment consists of the following:

| | |
|---|---|
| Principal Balance of the Lien | $   9,000.00 |
| Interest of $1.97 per diem from December 1, 2022, to February 28, 2025 | $   1,617.37 |
| Attorneys' Fees & Costs | $  16,474.08 |
| **Total** | **$  27,091.45** |

*See id.* The trial court also provided for post-judgment interest. This appeal ensued.

# Discussion and Decision

## 1. The Trial Court Did Not Err by Foreclosing the Lien

[9] Cleary contends the trial court erred by foreclosing the Lien because (a) HICA applies and bars Morlan's claims giving rise to the Lien and (b) the Agreement is unenforceable. We address each contention in turn.

### a. *Application of HICA*

[10] First, Cleary argues that the trial court erred by concluding HICA did not apply to bar Morlan's claims. The purpose of HICA

> is to protect consumers by placing specific minimum requirements on the contents of home improvement contracts . . . [because] few consumers are knowledgeable about the home improvement industry or of the techniques that must be employed to produce a sound structure. The consumer's reliance on the contractor coupled with the well-known abuses found in the home improvement industry, served as an impetus for the passage of [HICA], and contractors are therefore held to a strict standard.

*Benge v. Miller*, 855 N.E.2d 716, 720 (Ind. Ct. App. 2006) (internal citation omitted). To that end, HICA requires a real property improvement supplier performing any real property improvement in an amount greater than $150 to provide the consumer with a written contract therefor. Ind. Code § 24-5-11-1 to -14. A real property improvement supplier who violates HICA—by, among other things, failing to provide a written contract—commits "a deceptive act that is actionable . . . by a consumer under IC 24-5-0.5-4 and is subject to the remedies and penalties under IC 24-5-0.5." *Id.* § 24-5-11-14.

The parties specifically dispute whether Morlan performed a "real property improvement" because the New House was a new build rather than an already existing house. "[W]e review issues of statutory interpretation de novo." *J.Q.R. v. State*, 252 N.E.3d 919 (Ind. 2025) (citing *Bojko v. Anonymous Physician*, 232 N.E.3d 1155, 1158 (Ind. 2024)). In interpreting HICA's provisions, we must "give effect to every word and 'eschew those [interpretations] that treat some words as duplicative or meaningless.'" *Cutchin v. Beard*, 171 N.E.3d 991, 997 (Ind. 2021) (alteration in original) (quoting *Estabrook v. Mazak Corp.*, 140 N.E.3d 830, 836 (Ind. 2020)). We also give the words and phrases used "their plain, or ordinary and usual," meaning. I.C. § 1-1-4-1(1); *see also Morales v. Rust*, 228 N.E.3d 1025, 1054 (Ind. 2024) (quoting *ESPN, Inc. v. Univ. of Notre Dame Police Dept.*, 62 N.E.3d 1192, 1195 (Ind. 2016)) ("When interpreting words in a statute, this Court's 'first task' is to assign words their 'plain meaning' . . . ."), *reh'g denied* (Apr. 22, 2024), *cert. denied*, 145 S. Ct. 177 (2024). "The meaning of doubtful words may be determined by reference to their relationship with other associated words and phrases." *ESPN*, 62 N.E.3d at 1198 (quoting *600 Land, Inc. v. Metro. Bd. of Zoning Appeals of Marion Cnty.*, 889 N.E.2d 305, 311 (Ind. 2008)).

As used in HICA, a "real property improvement" is "any alteration, repair, replacement, reconstruction, or other modification of residential real property." I.C. § 24-5-11-3. Cleary argues that the New House was merely a "replacement" or "reconstruction" of his prior house on the Property that burned down, which means Morlan replaced or reconstructed the house's

wiring. Morlan contends that HICA "is not applicable to new residential construction," such as the New House, and contemplates only the improvement of existing residential real property. Appellee's Br. at 14. Cleary does not argue that HICA applies to new construction.

[13] We begin with the definition of "residential real property." That term "means real property that . . . *contains* one (1) to four (4) units; and . . . *is* used in whole or in part as a dwelling of a consumer"; this term "includes all fixtures to, structures on, and improvements to the real property." I.C. § 24-5-11-7.5 (emphases added). The use of the present tense—"contains" and "is"— indicates that to qualify as "residential real property," the real estate must *currently* have one to four units thereon and must *currently* be used as a dwelling of a consumer, either in whole or in part.

[14] Next, we turn to the list of nouns used in the definition of "real property improvement." We interpret each word in that list "in the same general sense." *Mi.D. v. State*, 57 N.E.3d 809, 814 (Ind. 2016) (quoting *State v. D.M.Z.*, 674 N.E.2d 585, 588 (Ind. Ct. App. 1996), *trans. denied*). HICA does not define "alteration," "repair," "replacement," "reconstruction," or "modification," so we look to general-language dictionaries to ascertain the plain meanings of these terms. *Performance Servs., Inc. v. Randolph E. Sch. Corp.*, 211 N.E.3d 508, 512 (Ind. 2023) (quoting *Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 174 (Ind. 2019)). "Alteration" generally means the act or process of making a thing

different without changing it into something else.[3]  "Repair" generally means the act or process of restoring by replacing a part or putting together what is torn or broken.[4]  "Replacement" generally means the action or process of putting something new in the place of something else or restoring something to a former place or position.[5]  "Reconstruction" generally means the act or process of rebuilding, repairing, or restoring something.[6]  "Modification" generally means the making of a limited change in something.[7]  Read together, these terms signal that a "real property improvement" is performed on *something that already exists* as opposed to *something that is being constructed for the first time*. Considering the definition of "residential real property" together with the listed nouns reveals that a "real property improvement" cannot be performed on a house that is being newly constructed.

Here, Cleary's previous house on the Property was "completely destroyed" by a fire and "was torn down."  Jan. Tr. Vol. II at 61.  It is undisputed that the New

---

[3] *Alteration*, MERRIAM-WESTER.COM DICTIONARY (Feb. 17, 2026), https://www.merriam-webster.com/dictionary/alteration; *Alter*, MERRIAM-WESTER.COM DICTIONARY (Feb. 15, 2026), https://www.merriam-webster.com/dictionary/alter.

[4] *Repair*, MERRIAM-WESTER.COM DICTIONARY (Feb. 18, 2026), https://www.merriam-webster.com/dictionary/repair.

[5] *Replacement*, MERRIAM-WESTER.COM DICTIONARY (Feb. 6, 2026), https://www.merriam-webster.com/dictionary/replacement; *Replace*, MERRIAM-WESTER.COM DICTIONARY (Feb. 19, 2026), https://www.merriam-webster.com/dictionary/replacing.

[6] *Reconstruction*, MERRIAM-WESTER.COM DICTIONARY (Feb. 18, 2026), https://www.merriam-webster.com/dictionary/reconstruction.

[7] *Modification*, MERRIAM-WESTER.COM DICTIONARY (Feb. 6, 2026), https://www.merriam-webster.com/dictionary/modification.

House was new construction that was in progress when Morlan performed the electrical work. Morlan and his team were the first to wire the New House. There was nothing for them to alter, repair, replace, reconstruct, or otherwise modify. In other words, Morlan was not performing a "real property improvement." On these facts, HICA does not apply and the trial court did not err in so concluding.

### b. Enforceability of the Agreement

[16] Second, Cleary argues that the Agreement is not enforceable because it was missing an essential term, namely, whether the Agreement was for (1) labor only or (2) labor and materials. The trial court determined the Agreement was for labor only:

> 8. That on or about the second week of November, 2022[,] CLEARY and MORLAN, entered into an oral agreement wherein *Morlan agreed to provide the labor required to install the "rough in" electrical service* in connection with the construction of a new three-bedroom, 4300 square foot (including basement) single family residence on the [Property]. *CLEARY agreed to provide and pay for the materials* and upon completion of the work and inspection would pay $9,000.00 to MORLAN for his work.
>
> 9. That pursuant to said agreement, MORLAN immediately furnished the labor to install the "rough-in" electrical service in a good and workmanlike manner; per the NEC Code; passing all inspections; and otherwise kept his promises for the labor provided in exchange for payment in the agreed amount of ($9,000.00) nine thousand dollars.

Appellant's App. Vol. II at 16–17 (emphases added).

25. CLEARY, a builder, did not have a written contract with any of the tradesmen working this job.

*Id.* at 19.

45. MORLAN and Company, all local tradesmen, are professionally trained union electricians; with more than 100 years of combined service between them.

46. Not only did they know the value of their expertise, MORLAN gave CLEARY the option to hire them on an hourly basis of payment for their time; which option was rejected by *CLEARY who insisted on a hard number for the labor while he picked up the costs of the materials.*

47. Whether the job took two days, two weeks or two months, MORLAN and company were being paid by the job; NOT by the hour and at that price certainly, not including the cost of materials. *To think that the agreement was anything other than an agreement for their services to get the job done as quickly as possible in exchange for a lump sum payment of $9,000.00 would amount to rewriting the agreement* and a windfall to CLEARY who has accepted the benefits of their expertise and had already turned down another contractor who was more expensive.

*Id.* at 23 (emphases added).

[17] The trial court here entered findings and conclusions sua sponte, so we review the "issues covered by the findings with a two-tiered standard of review that asks whether the evidence supports the findings, and whether the findings support the judgment." *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016) (citing *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014)). We will not reweigh the

evidence or judge witness credibility, and we consider only the evidence and reasonable inferences that support the court's decision. *In re Ma.H.*, 134 N.E.3d 41, 45 (Ind. 2019) (citing *In re K.E.*, 39 N.E.3d 641, 646 (Ind. 2015)). We review any issue not covered by the findings "under the general judgment standard," which means we will affirm "on any legal theory supported by the evidence." *Steele-Giri*, 51 N.E.3d at 123–24 (citing *S.D.*, 2 N.E.3d at 1287).

[18] The parties do not dispute the Agreement's existence; instead, they dispute whether the Agreement was missing an essential term such that it is unenforceable. Where, as here, the contract was not reduced to writing, the terms thereof "are a matter to be interpreted by the trier of fact." *Ballew v. Town of Clarksville*, 683 N.E.2d 636, 639 (Ind. Ct. App. 1997) (citing *Tuthill Corp., Fill-Rite Div. v. Wolfe*, 451 N.E.2d 72, 77 (Ind. Ct. App. 1983), *reh'g denied*), *trans. denied*. A contract only needs to contain the essential terms to be enforceable. *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 813 (Ind. 2009) (citing *Illiana Surgery & Med. Ctr., LLC. v. STG Funding, Inc.*, 824 N.E.2d 388 (Ind. Ct. App. 2005)). We "will not find that a contract is so uncertain as to preclude specific enforcement where a reasonable and logical interpretation will render the contract valid." *Id.* (citing *Donovan v. Ivy Knoll Apartments P'ship*, 537 N.E.2d 47 (Ind. Ct. App. 1989)).

[19] Here, the trial court determined that the Agreement was for labor only. In making this determination, the trial court clearly discredited Cleary's testimony that he believed it was for both labor and materials. Cleary's appellate arguments to the contrary are requests for us to reweigh the evidence and

reassess witness credibility, which we cannot do, *see Ma.H.*, 134 N.E.3d at 45 (citing *K.E.*, 39 N.E.3d at 646). We therefore cannot say the trial court clearly erred by concluding the Agreement was for labor only and by enforcing the Agreement. Consequently, the trial court did not err by foreclosing the Lien based on Cleary's breach of the Agreement.[8, 9]

## 2. Morlan Is Entitled to Appellate Attorneys' Fees

[20] Morlan cross-appeals for appellate attorneys' fees. The mechanic's lien statute provides that a lienholder who prevails in enforcing a lien is entitled to recover "reasonable attorney's fees." I.C. § 32-28-3-14(a). The statute also encompasses appellate attorneys' fees. *Ambrose v. Dalton Const., Inc.*, 44 N.E.3d 707, 715 (Ind. Ct. App. 2015) (citing *Templeton v. Sam Klain & Son, Inc.*, 425 N.E.2d 89, 94–95 (Ind. 1981)), *as clarified on reh'g*, 51 N.E.3d 320 (Ind. Ct. App. 2016). Lienholder Morlan has prevailed in this appeal, so he is entitled to recover reasonable attorneys' fees pursuant to Indiana Code section 32-28-3-14(a).

---

[8] Cleary does not dispute that he failed to pay Morlan $9,000, nor does he dispute that this failure constitutes a breach of the Agreement.

[9] Because we conclude the trial court did not err by foreclosing the Lien based on Cleary's breach of the Agreement, we need not address Cleary's remaining appellate argument that the trial court erred by concluding Morlan was alternatively entitled to foreclosure of the Lien based on quantum meruit. Also, we note that Cleary does not challenge the trial court's award of prejudgment interest, post-judgment interest, and attorneys' fees.

## Conclusion

In sum, the trial court did not err by foreclosing the Lien, and Morlan is statutorily entitled to appellate attorneys' fees. We therefore affirm the trial court's judgment of foreclosure and remand for a determination of Morlan's reasonable appellate attorneys' fees.

Affirmed and remanded.

May, J., and Mathias, J., concur.

ATTORNEY FOR APPELLANT

Bradley J. Adamsky
Drayton, Biege, Sirugo & Elliott, LLP
LaPorte, Indiana

ATTORNEY FOR APPELLEE

Michael S. Bergerson
Law Offices of Michael S. Bergerson
Michigan City, Indiana