

FILED

Apr 28 2017, 10:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Joseph R. McKinney<br>Muncie, Indiana | Robert G. Forbes<br>Forcum & Forbes, LLP<br>Hartford City, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Nancy Richardson,<br>*Appellant,*<br><br>v.<br><br>Susan Thieme,<br>*Appellee.* | April 28, 2017<br><br>Court of Appeals Case No.<br>05A02-1608-EU-1749<br><br>Appeal from the Blackford Circuit Court<br><br>The Honorable Jeffrey Eggers, Special Judge<br><br>Trial Court Cause No.<br>05C01-1407-EU-27 |

**Barnes, Judge.**

## Case Summary

[1] Nancy Richardson appeals the trial court's order rejecting her objections to the closing of the Unsupervised Estate of Clayton Ford by the Estate's personal representative, Susan Thieme. We affirm.

# Issues

The issues before us are:

    I.      whether the trial court applied an incorrect standard of proof in accepting Thieme's closing of the Estate and final accounting;

    II.     whether the trial court correctly found no improprieties in the manner in which the Estate's personal property was distributed; and

    III.    whether Thieme breached her fiduciary duty to the Estate.

# Facts

Ford died on June 30, 2014. Ford's will directed that his estate be administered without supervision, by either his wife or by Thieme, one of his daughters. It further stated:

> Either of said representatives shall act without bond and without the intervention of any court to the extent that such bond and court intervention of any process may be waived by me under the laws of the State of Indiana. Each shall have full power to sell, convey, and encumber, without notice or confirmation, any assets of my estate, real, personal or mixed, at such prices and terms as to either may seem just.

Appellee's App. Vol. II p. 7. Because Ford's wife pre-deceased him, Thieme was appointed personal representative. On November 7, 2014, Richardson, another of Ford's daughters, filed a petition for supervised administration of the Estate. The petition claimed Thieme failed to respond to Richardson's request

for an inventory of Estate assets and had sold or otherwise disposed of assets without any accounting. Thieme objected to Richardson's request; the trial court allowed continued unsupervised administration of the Estate unless any party requested a hearing on the matter, and Richardson never did so.

[3] On November 23, 2015, Thieme filed her closing statement and final accounting for the Estate. The accounting stated there were a total of $94,663.31 in Estate assets, leaving $89,973.31 in distributable assets after deducting $2,000.00 in fees for Thieme and $2,690.00 in attorney fees. Each of Ford's five children received one-sixth of that amount, or $14,995.55, in cash and property-in-kind, with the remaining one-sixth divided between his three grandchildren.

[4] On February 19, 2016, Richardson filed an objection to Thieme's closing statement and final accounting. The objection listed several instances of alleged improprieties regarding deposits to and withdrawals from the Estate bank account opened after Ford's death, which Richardson claimed were unsupported by adequate documentation. The objection also claimed that it was improper to pay Thieme $2,000 in fees based on her blanket statement that she had worked over 160 hours on Estate matters. The objection also alleged:

> It is extremely difficult to determine and reconcile the receipts and disbursements without a written Estate Account setting forth simple schedules of Receipts (inventoried assets and net value of property, receipts from sale of property, receipts from property not appraised, cancelled checks deposits to the Estate, etc. and a "Total" column regarding receipts). Similarly, there is no schedule of Disbursements. The PR did not provide the "totals"

for either the Receipts or Disbursements. Totals for Receipts and Disbursements and Assets on hand (if any) must be the same but this cannot be determined without a proper accounting and closing statement. The problem is that (assuming all of the unidentified amounts on the deposit slips are for the sale of items) the total adds up to far less (over $2500) than the "cash" that was deposited to the Estate account. Further, there were 92 items that were not appraised by Ellenberger that are unaccounted for in the final accounting statement. Were those items sold for cash and the money (how much?) received and deposited? If not sold, what happened to the items? Were they distributed to the heirs? The insufficiency of the closing statement and lack of supporting documentation raises these questions and falls short of a full and understandable closing statement.

Appellant's App. Vol. II pp. 11-12.

[5] The trial court held a hearing on Richardson's objections on May 20, 2016. Richardson testified that she had difficulty communicating with Thieme regarding Estate matters throughout its administration and received "push back" when she attempted to get information. Tr. p. 8. Richardson also stated that other family members frequently met and distributed items of Ford's personal property between themselves for months before she had an opportunity to review and request items and that Thieme allowed the heirs to charge items against the Estate rather than paying for them. During Richardson's testimony there was discussion of an appraisal of personal property that amounted to approximately $5,200.00, but which allegedly failed to include about ninety items. Richardson also claimed that this amount was

not reflected in the final accounting or deposited into the Estate's account. This appraisal list was not introduced into evidence nor is it in the record before us.

[6] During her testimony, Thieme gave explanations for each of the Estate bank account withdrawals or deposits that Richardson had challenged in her written list of objections. Regarding the personal property, Thieme stated that it was difficult to distribute the personal property amongst the multiple heirs and their families but that she believed she had done so to the best of her ability. As for the appraisal list, Thieme testified generally that some of the items were paid for and some were charged to the Estate. She also testified that she deposited "pretty close" to $5,200.00 into the Estate account with respect to these items, although counsel for Richardson asserted that the deposits in that regard were approximately $2,000.00 short. *Id.* at 43.

[7] On July 8, 2016, the trial court rejected all of Richardson's objections to the closing of the Estate. It entered the following sua sponte findings with its order:

> 1. The initial inventory listed assets of $123,129.00.

> 2. The initial inventory was high as the real estate, appraised at $78,500.00, only netted at sale $65,732;00, a difference of negative $12,768.00.

> 3. In addition, the personal property appraisal was high as the personal property did not net $5,852.00.

> 4. Expenses incurred by the estate for administration of the estate, maintaining utilities, taxes, insurance, repairs to the home, court costs, publication fees, attorney fees and the

personal representative fees total approximately $15,141.00 which the Court determines is a reasonable number.

5. The objections listed on the February 19, 2016, pleading were reasonably overcome by the evidence presented at the hearing on May 20, 2016.

6. Even assuming the personal property as listed in the initial inventory was worth $5,852.00, the distribution, at best, would have been as follows:

| | | |
|---|---|---|
| A. | Initial inventory | ($123,129.00) |
| B. | Reduction for net real estate | ($12,768.00) |
| C. | Cost, fees, etcetera | ($15,141.00) |
| D. | Net estate for distribution | $95,220.00 |
| E. | Net estate divided 6 shares for heirs | $15,870.00 |

7. The $875.00 difference between what was received by the heirs 1/6th share is insignificant given the personal property value question and what was actually received by each heir.

Appellant's App. Vol. II pp. 25-26.[1] The trial court thus ordered the Estate closed. Richardson now appeals.

---

[1] The initial inventory and property appraisals the trial court referred to are not in the record before us. Neither party asserts that our viewing of those documents is necessary to resolve this appeal. Also, we note

# Analysis

The trial court here entered some limited findings without either party having requested them under Indiana Trial Rule 52(A). "In such a case, the specific findings control only with respect to issues they cover, and a general judgment standard applies to issues outside the findings." *Montgomery v. Montgomery*, 59 N.E.3d 343, 349 (Ind. Ct. App. 2016), *trans. denied*. We will set aside the trial court's findings or judgment only if they are clearly erroneous. *Id.* "A finding is clearly erroneous only if there are no facts or inferences drawn therefrom to support it." *Id.* Additionally, "[w]e may affirm a general judgment with sua sponte findings upon any legal theory supported by the evidence introduced at trial." *Stone v. Stone*, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013). Sua sponte findings control as to the issues upon which the court has found, but they do not otherwise affect our general judgment standard of review, "and we may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court." *Id.*

## I. Burden of Proof/Accounting

The first claim Richardson makes is that the trial court applied an incorrect burden of proof in deciding whether to reject her objections to the Estate closing. She notes that it has been held, at least within the context of supervised

---

the discrepancy between the trial testimony that the personal property originally appraised for $5,200.00 and the trial court's finding that it appraised for $5,852.00, but we are not able to resolve that discrepancy.

estates, that a personal representative faced with objections to a final estate accounting and closing bears the burden of establishing the correctness of the accounting. *Matter of Estate of Saylors*, 671 N.E.2d 905, 907 (Ind. Ct. App. 1996). She contends that the trial court's statement in its findings that Thieme had "reasonably overcome" Richardon's objections was inconsistent with this burden of proof.

[10] We disagree. Even if we were to assume that the same standard of proof applies to objections to the closing of an unsupervised estate as a supervised one, the trial court's statement is not inconsistent with that standard. It clearly indicates the trial court placed the burden of proof upon Thieme to rebut Richardson's objections to the closing of the Estate and found that Thieme had met that burden.

[11] Richardson also suggests that the Estate should not have been closed because Thieme failed to adequately keep records and receipts related to disposition of Estate assets. She asserts, "When filing the accounting, the personal representative must also 'file receipts for disbursements of assets made during the period covered by the account.'" Appellant's Br. p. 6. For this proposition, Richardson cites *Saylors*. However, the quoted language actually comes from Indiana Code Section 29-1-16-4, which states:

> Accounts rendered to the court by a personal representative shall be for a period distinctly stated and shall consist of three (3) schedules, of which the first shall show the amount of the property chargeable to the personal representative; the second shall show payments, charges, losses and distributions; the third

shall show the property on hand constituting the balance of such account, if any. When an account is filed, the personal representative shall also file receipts for disbursements of assets made during the period covered by the account. Whenever the personal representative is unable to file receipts for any disbursements, the court may permit him to substantiate them by other proof. The court may provide for an inspection of the balance of assets on hand. The court may, upon its own motion, or upon petition, provide that verification of accounts or credits thereon may be made by the unqualified certificate of a certified public accountant in lieu of receipts or other proof.

Richardson also contends that the final accounting Thieme prepared did not comply with the three-schedule format required by the statute. Thieme argues that this and other statutory provisions governing final estate accountings found in Indiana Code Chapter 29-1-16 do not apply to unsupervised estates. We agree.

[12] Indiana Code Section 29-1-7.5-4(a) provides that a personal representative may close an unsupervised estate by filing a verified statement with the court relaying that the personal representative has done the following:

> (1) Published notice to creditors as provided in IC 29-1-7-7(b), and that the first publication occurred more than three (3) months prior to the date of the statement.

> (2) Provided notice to creditors as required under IC 29-1-7-7(c) and IC 29-1-7-7(d).

> (3) Fully administered the estate of the decedent by making payment, settlement, or other disposition of all claims which were presented, expenses of administration and estate,

inheritance, and other death taxes, except as specified in the statement. If any claims remain undischarged, the statement shall:

> (A) state whether the personal representative has distributed the estate, subject to possible liability, with the agreement of the distributees; or

> (B) detail other arrangements which have been made to accommodate outstanding liabilities.

(4) Executed and recorded a personal representative's deed for any real estate owned by the decedent.

(5) Distributed all the assets of the estate to the persons entitled to receive the assets.

(6) Sent a copy of the statement to all distributees of the estate and to all creditors or other claimants of whom the personal representative has actual knowledge whose claims are neither paid nor barred and has furnished a full account in writing of the personal representative's administration to the distributees whose interests are affected.

(7) Provided the court with the names and addresses of all distributees, creditors, and claimants to whom the personal representative has sent a copy of the statement under subdivision (6).

[13]   Absent from this detailed list is any requirement that the personal representative for an unsupervised estate file a final accounting with the trial court or that it be in any particular format, whereas such an accounting is expressly required in

supervised estates by Indiana Code Section 29-1-16-3. It also appears to be the general understanding of probate practitioners that no such accounting is required for unsupervised estates unless local rules require them. *See* 25 IND. PRACTICE, ANDERSON'S PROBATE FORMS § 4:12 (2016-17 ed.) ("Since the accounting does not have to be filed with the court, you can establish whatever format for the estate accounting that you prefer."). The express provisions governing unsupervised estates are found in Indiana Code Chapter 29-1-7.5. There are many other statutes in other chapters of the Indiana Probate Code governing estate administration, but there is no explicit statutory language as to whether these other statutes also govern unsupervised estates. When interpreting statutes, we must bear in mind how multiple statutory provisions interact, and consider the act as a whole and its general purpose. *Murray v. Conseco, Inc.*, 795 N.E.2d 454, 460 (Ind. 2003).

[14] We conclude that, to the extent a statute governing unsupervised estates conflicts with another statute in the Probate Code, the other statute does not apply to unsupervised estate administration. Here, the detailed statutes governing final estate accountings are inconsistent with the express, limited requirements for closing an unsupervised estate. As such, Thieme had no obligation to file a formal three-schedule accounting with the trial court, and neither did the statutory requirement of keeping detailed receipts apply here. Indeed, requiring such detailed accountings and filing of receipts would seem to contravene the notion and purpose of having an unsupervised estate. It likewise would contravene the clearly-stated intent of Ford in his will that the personal

representative of his Estate should have broad, unsupervised discretion to dispose of Estate assets as she saw fit.

[15] Richardson did take steps to convert administration of the Estate into a supervised one, as was her right under Indiana Code Section 29-1-7.5-2(d), in which case Thieme would have been required to keep more detailed records regarding the Estate administration and to file a detailed final accounting. However, the trial court was not required to grant Richardson's request; the statute provides that a trial court "may" grant such a request "if the court finds that such a revocation is in the best interests of the estate, creditors, taxing authorities, heirs, legatees, or devisees." The trial court did leave open the possibility that Richardson could request a hearing to further argue for revocation of unsupervised administration, but she did not pursue that possibility and the Estate remained unsupervised, to her peril. *See In re Estate of McNabb*, 744 N.E.2d 569, 573 (Ind. Ct. App. 2001). In effect, Richardson through her objections to the Estate closing wished to retroactively impose supervised estate requirements upon Thieme. We believe it is neither appropriate nor advisable to do so. The trial court did not err in not requiring more detailed filings or documentation from Thieme regarding the administration of the Estate.

## II. Personal Property Distribution

[16] Next, Richardson contends the trial court erred in finding no improprieties with respect to Thieme's distribution of Ford's personal property. She takes particular issue with the trial court's finding that, even if the personal property

had fetched the amount it was originally appraised at, "[t]he $875.00 difference between what was received by the heirs 1/6th share is insignificant given the personal property value question and what was actually received by each heir." Appellant's App. p. 26. Thieme asserts Richardson has waived consideration of this issue by failing to cite any authority in support of it. *See Kentucky Nat'l Ins. Co. v. Empire Fire & Marine Ins. Co.*, 919 N.E.2d 565, 586 (Ind. Ct. App. 2010); Ind. Appellate Rule 46(A)(8)(a).

[17] Waiver notwithstanding, we see no reversible error on this point. Standing alone, the trial court's statement that a difference of $875.00 per heir is an "insignificant" amount might be incorrect; it is not a de minimis amount of money to most individuals. However, in the context of the trial court's other findings and the record as a whole, this statement is not troublesome. First, we note that property appraisals are not a perfect science; they are only an estimate of value, not a perfect guarantee of an item's worth, and values can fluctuate over time. *See Wagler v. W. Boggs Sewer Dist., Inc.*, 898 N.E.2d 815, 820 (Ind. 2008). That the personal property ultimately was disposed for less than it was initially appraised for is not by itself an indication that Thieme acted improperly in any way. Also, when Thieme was questioned on this topic at the hearing, counsel for Richardson suggested that approximately $2,000.00 less than the personal property's appraised value had been deposited into the Estate account for sales of that property. Thus, the only possible "gap" regarding the personal property is $2,000.00, not $5,200.00 to $5,852.00. Richardson also claims that eighty to ninety items of personal property were never appraised; however, she

failed to indicate whether these items were relatively worthless trinkets or items that could be more valuable, nor did she herself place an estimate on these items' total value. Finally, once again Richardson's main complaint seems to be that Thieme did not adequately keep records of how each and every one of Ford's items of personal property were disposed. Given the relative informality of an unsupervised estate administration, we cannot say that a slight discrepancy between an initial appraisal of an estate's personal property and the records of what those items ultimately sold for is sufficient reason to prevent the closing of such an estate.

### III. Breach of Fiduciary Duty

[18] Richardon's last argument is that Thieme breached her fiduciary duty to the Estate by taking items of Ford's personal property into her possession and keeping them. A personal representative of an estate is equivalent to a trustee appointed by law for the benefit of and the protection of creditors and distributees of that estate. *In re Bender*, 844 N.E.2d 170, 178 (Ind. Ct. App. 2006). Generally, a personal representative is barred from purchasing estate assets, unless there is a family settlement or agreement approving such transactions. *Id.* at 179.

[19] However, Richardson failed to allege improper self-dealing by Thieme in her written objections to the closing of the Estate, nor was that claim made during the objections hearing. Indiana Code Section 29-1-1-10, which is a general provision apparently applicable to both unsupervised and supervised estates, states that any objections to estate filings or answers thereto "must be filed in

writing as a prerequisite of being heard by the court." More generally, a party waives appellate review of an issue or argument unless the issue or argument was raised before the trial court. *Akiwumi v. Akiwumi*, 23 N.E.3d 734, 741 (Ind. Ct. App. 2014). By failing to raise this issue before the trial court, Richardson did not permit Thieme an opportunity to rebut a claim of improper self-dealing. Richardson has waived appellate review of this claim.

## Conclusion

[20] The trial court did not apply an incorrect standard of proof in considering Richardson's objections to Thieme's closing of the Estate, and Thieme's final accounting did not have to comply with the requirements for final accountings in supervised estates. Richardson also has failed to establish reversible error in the distribution of the Estate's personal property, either with respect to the property's valuation or Thieme's alleged self-dealing. We affirm the trial court's order closing the Estate.

[21] Affirmed.

Kirsch, J., and Robb, J., concur.