## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 29 2020, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Dawn M. Robertson
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
ROBERT C. THOMPSON, JR.

Joseph M. Dietz
Meils, Thompson, Dietz, & Berish
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE
INDIANA FAMILY AND SOCIAL
SERVICES ADMINISTRATION

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re: The Unsupervised Estate of Susan Rissman | October 29, 2020 |
| | Court of Appeals Case No. 20A-EU-740 |
| Dawn M. Robertson, | Appeal from the Marion Superior Court, Probate Division |
| *Appellant-Petitioner,* | |
| | The Honorable Steven R. Eichholtz, Judge |
| v. | |
| | Trial Court Cause No. 49D08-1804-EU-14975 |
| Robert C. Thompson, Jr., as Limited Guardian of Heir Matthew Rissman and Indiana Family and Social Services Administration, | |
| *Appellees-Respondents.* | |

**Bradford, Chief Judge.**

# Case Summary

[1] Susan Rissman died testate on March 20, 2018. Dawn Robertson was thereafter appointed personal representative of Rissman's estate. After Robertson filed her final accounting of Rissman's estate, Robert Thompson, Jr.,

the limited guardian appointed for Rissman's son, and the Indiana Family Social Services Administration, Office of Medicaid Policy and Planning ("FSSA"), objected to the final accounting. Specifically, Thompson and FSSA objected to the payment of certain funds relating to the cleaning and sale of Rissman's home. The probate court determined that the payment of the challenged funds was unreasonable and ordered Robertson to pay a surcharge to Rissman's estate in the amount of $47,937.10. Robertson contends on appeal that the probate court erred in ordering her to pay the $47,937.10 surcharge. Concluding otherwise, we affirm.

# Facts and Procedural History

[2] Rissman died testate on March 20, 2018. Pursuant to the terms of her will, Rissman left her entire estate to her son Matthew Rissman, under the following conditions:

> since I have had no contact with my son for over twenty years, and since his current whereabouts are unknown to me, if my personal representative makes a reasonable and diligent effort to locate my son but is unable to do so within one year after my probate estate is opened, the above devise and bequest to my son shall lapse and my residuary estate shall pass to my good friend, Dawn M. Robertson.

Appellee FSSA's App. Vol. II p. 55. Also pursuant to the terms of her will, Rissman appointed John Rogers to serve of personal representative of her estate. At some point, Thompson was appointed limited guardian of Matthew Rissman.

[3] On April 18, 2018, Rogers filed a petition for unsupervised administration of Rissman's estate. The probate court issued an order appointing Rogers as the personal representative of Rissman's estate. On May 7, 2018, FSSA filed a $13,627.20 claim against Rissman's estate for the recovery of funds paid for medical assistance on Rissman's behalf.[1] On May 9, 2018, Rogers filed a petition to appoint Robertson as a substitute personal representative. The probate court granted Rogers's motion on May 11, 2018, removed Rogers as the personal representative, appointed Robertson as the substitute personal representative, and ordered Robertson to pay a $17,000 bond.

[4] On January 29, 2019, Robertson petitioned the probate court to convert the unsupervised estate to a supervised estate due to insolvency. Thompson and FSSA both objected to Robertson's petition. Thompson, FSSA, and Robertson subsequently entered the following stipulations:

> 1. On January 29, 2019, Dawn M. Robertson ("Robertson"), Personal Representative of the Estate of Susan K. Rissman (the "Estate"), filed a Petition to Convert Unsupervised Estate to a Supervised Estate Due to Insolvency (herein after "Petition to Convert").
>
> 2. On February 1, 2019, the Court entered an Order Granting Petition to Convert Unsupervised Estate to Supervised Estate Due to Insolvency, which converted the Estate to a supervised estate and set the matter for hearing on March 1, 2019 to determine how the alleged remaining funds shall be distributed.

---

[1] FSSA's claim was subsequently amended to assert a $15,497 claim against Rissman's estate.

3. On March 5, 2019, Matthew Rissman filed an Objection to the Petition to Convert.

4. On March 14, 2019, FSSA filed an Objection to the Petition to Convert.

5. FSSA and Matthew Rissman agree that their objections to the Petition to Convert Unsupervised Estate to a Supervised Estate Due to Insolvency were objections to expenditures made by Robertson that FSSA and Mathew Rissman allege are improper distributions of the Estate's assets that resulted in the insolvency of the Estate.

6. FSSA and Matthew Rissman have no objection to the Court converting the Estate to a Supervised Estate Due to Insolvency, only to the Court's order that the remaining amounts be set for hearing on distribution prior to the filing of a proper final accounting, as required in a supervised estate.

7. The Parties respectfully request that the hearing scheduled for June 13, 2019 at 2:30 pm, on the Petition to Convert Unsupervised Estate to A Supervised Estate Due to Insolvency, be vacated by agreement of the Parties to allow for the filing of a proper final accounting.

8. The Parties agree that the Estate will provide a detailed final accounting within thirty days of the entry of the order vacating the hearing.

9. The Parties agree that FSSA and Matthew Rissman will preserve their rights to object to any potentially improper payments specified in the Personal Representative's Final Accounting and distribution of assets, pursuant to the requirements of supervised administration, or other improper expenditures or actions otherwise discovered prior the closing of the Estate.

10.   The Parties agree that FSSA and Mathew Rissman reserve the right to conduct further necessary discovery into any alleged improper distribution after the filing of the final accounting.

Appellee Thompson's App. Vol. II pp. 34–35.   The probate court accepted the stipulations and granted the requested relief on June 3, 2019.

Robertson filed her final accounting on July 8, 2019.   Thompson and FSSA both objected to Robertson's final accounting.   On February 21, 2020, the probate court issued an order of surcharge, in which it ordered as follows:

1. That the personal representative's Final Accounting presents costs of selling of a $45,000.00 house as follows:

| | |
|---|---|
| (a) Labor for cleaning out house. | $39,282.50 |
| (b) Dumpsters | 1,054.60 |
| (c) Real estate fees | $15,750.00 |
| TOTAL | $56,087.10 |

Said sums exceed the value of the sale price by $11,087.10.

2.    That testimony received by this Court stated a reasonable fee for the cleaning of the residence and storage units with dumpsters under the most extreme conditions was $5,000.00[.]

3.    That testimony received by this Court stated a reasonable fee for sale of the real estate was 7% or $3,150.00, and that 33 1/3% was unheard of and unreasonable.

4.    That Dawn M. Robertson, along with her surety, Western Surety Company (Subject to the Bond limitation of $17,000.00) is surcharged for the sum of $47,937.10.

5. The Court authorizes Robert C. Thompson, Jr. to receive the $17,000.00 bond payment from Western Surety to be placed in their IOLTA account pending further order of this Court.

6. Within 30 days of this Order, all attorneys must file their Final Petition for Fees, and the Court shall set this matter for hearing for distribution of available proceeds, and remaining surcharge amount assigned to the appropriate party.

Appellee Thompson's App. Vol. II pp. 15–16.

# Discussion and Decision

[6] Robertson contends that the probate court erred in ordering her to pay a $47,937.10 surcharge to Rissman's estate. For its part, FSSA argues that the probate court's order is not clearly erroneous as the evidence establishes that "Robertson engaged in neglect and self-dealing when she served as Decedent Rissman's personal representative resulting in a loss to the estate." Appellee FSSA's Br. p. 15. Thompson likewise argues that the probate court's order is not clearly erroneous as the evidence establishes that Robertson "drained the assets of this estate for the benefit of herself and her 'church family'." Appellee Thompson's Br. p. 13.

[7] In this case, the probate court entered limited written findings without any party having requested them.

> "In such a case, the specific findings control only with respect to issues they cover, and a general judgment standard applies to issues outside the findings." *Montgomery v. Montgomery*, 59

N.E.3d 343, 349 (Ind. Ct. App. 2016), *trans. denied*. We will set aside the trial court's findings or judgment only if they are clearly erroneous. *Id.* "A finding is clearly erroneous only if there are no facts or inferences drawn therefrom to support it." *Id.* Additionally, "[w]e may affirm a general judgment with sua sponte findings upon any legal theory supported by the evidence introduced at trial." *Stone v. Stone*, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013). Sua sponte findings control as to the issues upon which the court has found, but they do not otherwise affect our general judgment standard of review, "and we may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court." *Id.*

*Richardson v. Thieme*, 76 N.E.3d 892, 896–97 (Ind. Ct. App. 2017). In reviewing the probate court's findings and conclusions thereon, "we will not reweigh the evidence or assess witness credibility." *Matter of Estate of Burmeister*, 621 N.E.2d 647, 649 (Ind. Ct. App. 1993).

## I.  Overview of Law Relating to a Personal Representative's Final Accounting of an Estate

[8] "Under the Indiana Probate Code, a personal representative is responsible for collecting and preserving all assets of the decedent's estate." *In re Bender*, 844 N.E.2d 170, 178 (Ind. Ct. App. 2006). "[A] personal representative of an estate is regarded as a trustee appointed by law for the benefit of and the protection of creditors and distributees of that estate." *Id.* "There is a thread which runs through the law governing fiduciary relationships which forbids a person standing in a fiduciary capacity to another from profiting by dealing in the property of his beneficiary, and any such profit realized must be disgorged in

favor of that beneficiary." *Fall v. Miller*, 462 N.E.2d 1059, 1061 (Ind. Ct. App. 1984).

[9]
> Every personal representative shall be liable for any loss to the estate arising from his neglect or unreasonable delay in collecting the credits or other assets of the estate or in selling, mortgaging or leasing the property of the estate; for neglect in paying over money or delivering property of the estate he shall have in his hands; for failure to account for or to close the estate within the time provided by this article; for any loss to the estate arising from his embezzlement or commingling of the assets of the estate with other property; *for loss to the estate through self-dealing*; for any loss to the estate arising from wrongful acts or omissions of his co-representatives which he could have prevented by the exercise of ordinary care; and *for any other negligent or wilful act or nonfeasance in his administration of the estate by which loss to the estate arises*.

Ind. Code § 29-1-16-1(c) (emphases added). Upon the filing of a personal representative's account of the decedent's estate, "hearing and notice thereof shall be had." Ind. Code § 29-1-16-6. "At any time prior to the hearing on an account of a personal representative, any interested person may file written objections to any item or omission in the account. All such objections shall be specific and shall indicate the modification desired." Ind. Code § 29-1-16-7.

> Upon the approval of the account of a personal representative, the personal representative and his sureties shall, subject to the right of appeal and to the power of the court to vacate its final orders, be relieved from liability for the administration of his trust during the accounting period, including the investment of the assets of the estate. *The court may disapprove the account in whole or*

> *in part and surcharge the personal representative for any loss caused by*
> *any breach of duty.*

Ind. Code § 29-1-16-8 (emphasis added).

## II.  Application of the Probate Code to the Instant Matter

[10]     In ordering that Robertson pay a surcharge to Rissman's estate, the probate court determined that Robertson breached her duty to the estate by negligently or willfully paying unreasonable fees in connection to the cleaning and sale of Rissman's home.  Robertson's final accounting indicated that she paid a 33 1/3% realtor fee or $15,750.00 in connection to the $45,000 sale of the home.  However, Richard Schulte, a realtor with over forty-nine years of experience, testified that "the going rate" for realtor fees was "[s]ix or seven percent."  Tr. Vol. II p. 44.

[11]     Robertson's final accounting also indicated that she paid $40,337.10 for labor and dumpsters for cleaning out the home.  Robertson claimed that significant labor was required to clean the home because Rissman was a hoarder and the home and three storage units rented by Rissman were filled with "[w]ell over a thousand" bags of trash and belongings.  Tr. Vol. II p. 12.  Robertson acknowledged that she had not gotten "any other bids" for a reasonable cost to clean up the home.  Tr. Vol. II p. 23.  Schulte testified that he believed that a reasonable fee to clean out the house, including renting a dumpster, would have been "a thousand to two thousand, three-thousand-dollar bill at the most."  Tr. Vol. II p. 46.  Schulte also testified that he believed that the sum paid by

Robertson to clean out the home was "extraordinary." Tr. Vol. II p. 47. Additionally, William Teuton testified that through the course of his employment he had worked with banks on "[t]rashed out houses, liquidated estates and guardianships" and had cleaned out at least two hundred "hoarder houses." Tr. Vol. II pp. 48, 49. Teuton further testified that the cost to clean out a house in the same condition as Rissman's home would be "max – including the dumpster, five thousand dollars." Tr. Vol. II p. 50.

[12] Robertson further claimed that "looking at the age and the condition of the house and having some idea of what houses are worth in that area," she had valued the home at $40,000. Tr. Vol. II p. 19. However, despite Robertson's belief regarding the value of the home, in 2019, tax records valued the home at $88,000. Schulte testified that he had researched Rissman's home and had found that it was located in a good, desirable, and stable neighborhood that had a median home value of approximately $120,000.

[13] The probate court considered the evidence and concluded that the fees relating to the cleaning and sale of Rissman's home paid by Robertson were unreasonable and resulted in a loss to Rissman's estate. In ordering Robertson to pay a $47,937.10 surcharge to Rissman's estate, the probate court simply ordered Robertson to repay the losses suffered by the estate as a result of her breach of fiduciary duty. Based on the evidence presented during the evidentiary hearing, we cannot say that the probate court's determination is clearly erroneous.

## III.  Additional Claims Raised by Robertson

In arguing that the probate court's order is clearly erroneous, Robertson also cites to the Marion County local rules and the four corners doctrine for interpreting contracts.  Robertson asserts that pursuant to the Marion County local rules pertaining to unsupervised estates, her authority as personal representative was not subject to court approval.  Robertson's reliance on these local rules is misplaced, however, because, upon stipulation by the parties, the probate court converted the unsupervised estate to a supervised estate, thus making the local rules relating to an unsupervised estate inapplicable.  Further, Robertson points to nothing in the Marion County local rules that extinguishes Robertson's fiduciary duty to protect the assets in the estate or revokes the probate court's authorization to order that she pay a surcharge to the estate for any loss caused by a breach of her duty.  *See* Ind. Code § 29-1-16-8.  Robertson's reliance on the four corners doctrine is also misplaced as it has no bearing on the question of whether the sums paid by Robertson in relation to cleaning and selling Rissman's home were reasonable.  Thus, neither the Marion County local rules nor the four corners doctrine support Robertson's position.[2]

---

[2]  Furthermore, to the extent that Robertson argues that the probate court was biased against her, Robertson has waived this argument by failing to point to any evidence of bias or provide a cogent argument relating to her claim of bias.  *See Smith v. State*, 822 N.E.2d 193, 202–03 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record.").  Furthermore still, despite Robertson's assertion that the probate court's order was clearly erroneous because Matthew Rissman failed to appear before the probate court in person, Matthew's interests were represented by his limited guardian and Robertson has pointed to no authority or rules that would have required Matthew's personal appearance before the probate court.

The judgment of the probate court is affirmed.

Najam, J., and Mathias, J., concur.